**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------

**HELLER INCORPORATED,**

               **Plaintiff,**       **09 Civ. 1909 (JGK)**

       - against -             **MEMORANDUM OPINION**
                                                       **AND ORDER**
**DESIGN WITHIN REACH, INC.,**

               **Defendant.**

------------------------------------

**JOHN G. KOELTL, District Judge:**

    The plaintiff, Heller Incorporated ("Heller"), has sued the defendant, Design Within Reach, Inc. ("DWR"), for various claims including trademark dilution and trade dress infringement, in violation of the Lanham Act § 43, 15 U.S.C. § 1125 and New York General Business Law § 360-l.  The defendant moves pursuant to Federal Rules of Civil Procedure 12(b)(6) to dismiss some, but not all of the claims.

I

    On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the allegations in the Complaint are accepted as true.  Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998).  In deciding a motion to dismiss, all reasonable inferences must be drawn in the plaintiff's favor.  Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995); Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989).  The

Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss a claim if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Twombly v. Bell Atl. Corp., 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

In deciding the defendant's motion to dismiss, the Court may consider documents attached to the Complaint or incorporated in it by reference, matters of which judicial notice may be taken, or documents that the plaintiff relied upon in bringing suit and either are in its possession or of which it had knowledge. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2000); see also Jofen v. Epoch Biosciences, Inc., No. 01 Civ. 4129, 2002 WL 1461351, at *1 (S.D.N.Y. July 8, 2002).

While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 129 S.

Ct. at 1940; see also Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007); Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002).

II

The Court accepts the following factual allegations for the purposes of this motion.  The plaintiff is a New York corporation with its principal place of business in New York. (Compl. ¶ 5.)  The plaintiff is an international manufacturer, distributor, and wholesale and retail seller of furniture with production facilities in the United States and Europe.  (Compl. ¶ 7.)  In 1998, Mario Bellini, an Italian designer, designed an "ornamental and sculptural" chair known as the "Bellini Chair," for the plaintiff.  (Compl. ¶ 8; Exs. A and C.)  The plaintiff has continuously manufactured, promoted, and sold the Bellini Chair since 1998.  (Compl. ¶ 9.)  The Bellini Chair has won several prestigious awards, including the Compasso d'Oro in 2001, and is part of the permanent collection of the Metropolitan Museum of Art in New York City.  (Compl. ¶ 10.) Since 1998, the plaintiff has sold more than 180,000 units of the Bellini Chair, generating sales of over $9 million. (Compl. ¶ 11.)  The plaintiff asserts that the design of the Bellini Chair has attained secondary meaning among the trade and the

public as being identified exclusively with the plaintiff. (Compl. ¶ 12.)

On July 31, 2007, the United States Patent and Trademark Office ("USPTO") issued a registration for the design of the Bellini Chair to the plaintiff under Trademark Registration No. 3,270,850 (the "trademark").  (Compl. ¶ 13; Ex. A.)  The plaintiff asserts that the USPTO recognized the secondary meaning of the design by issuing the trademark.  (Compl. ¶ 13.) In support of the plaintiff's assertion of secondary meaning, Robert Forbes, the founder and former director of the defendant, submitted a declaration to the USPTO on behalf of the plaintiff in 2006 stating his opinion that "the relevant public interested in contemporary furniture understands the source of the Bellini Chair to be Heller Design, Inc."  (Compl. ¶ 14; Ex. B.)  Heller Design, Inc. was the former name of the plaintiff.  (Compl. ¶ 14.)

The defendant is a Delaware corporation with its principal place of business in San Francisco, California.  (Compl. ¶ 6.) The defendant operates retail furniture stores throughout the United States, including in New York.  (Compl. ¶ 15.)  In 1999, the defendant began selling Heller's Bellini Chair through its retail stores, catalog and the Internet and was the plaintiff's largest retail customer for the Bellini Chair for several years. (Compl. ¶¶ 16-17.)

The plaintiff alleges that the defendant recently began selling a chair that is confusingly similar to the Bellini Chair (the "DWR Chair"). (Compl. ¶ 2; Ex. D.) The plaintiff claims that the DWR Chair is identical to the Bellini Chair except for a small crescent-shaped opening in the back of the chair. (Compl. ¶¶ 18-19; Exs. C and D.) The plaintiff further alleges that the defendant has knowingly, willfully, intentionally and maliciously imitated the Bellini Chair trademark and trade dress. (Compl. ¶ 26.) The plaintiff believes that potential customers will mistakenly attribute the DWR Chair to the plaintiff based on the secondary meaning the Bellini design has achieved. (Compl. ¶¶ 23-25.) The DWR chair has a lower retail price than the Bellini Chair, and the plaintiff alleges that it is of inferior quality. (Compl. ¶ 22.) Furthermore, the plaintiff believes that the alleged inferior quality of the DWR chair may damage the goodwill and high-quality reputation of the plaintiff with respect to its Bellini Chair. (Compl. ¶¶ 23-25.)

III

The plaintiff alleges nine causes of action in the Complaint, four of which are at issue in this partial motion to dismiss. First, the plaintiff asserts a federal dilution claim as to the Bellini Chair trademark. (See Compl. ¶¶ 44-48 (Pl.'s Fourth Claim for Relief.)) Second, the plaintiff asserts three

5

claims related to the Bellini Chair trade dress, namely: federal unfair competition, state injury to business reputation, and common law trade dress infringement and unfair competition. (See Compl. ¶¶ 38-43, 58-61, 67-71 (Pl.'s Third, Seventh, and Ninth Claims for Relief respectively.))  The Court considers each of the plaintiff's claims in turn.

A

In October 2006, Congress enacted the Trademark Dilution Revision Act ("TDRA") to replace the Federal Trademark Dilution Act ("FTDA").  Lanham Act § 43(c), 15 U.S.C. § 1125(c).  The TDRA provides:

> the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

Lanham Act § 43(c)(1), 15 U.S.C. § 1125(c)(1).

A trademark holder claiming dilution under the TDRA must show the following four elements: (1) the mark is famous, (2) the defendant is making use of the mark in commerce, (3) the defendant's use of the mark began after the mark became famous, and (4) the likelihood of dilution.  Although the TDRA altered some of the elements of federal trademark dilution, the

6

requirement that the mark be famous predated the 2006 amendments. The Court of Appeals for the Second Circuit noted that the element of federal antidilution law that "most narrows the universe" of claimants is the requirement that "the senior mark be truly famous before a court will afford the owner of the mark the vast protections of the FTDA." Savin Corp. v. Savin Group, 391 F.3d 439, 449 (2d Cir. 2004).

The TDRA states that in order for a mark to be "famous," it must be "widely recognized by the general consuming public of the United States" as a designation indicating a single source of goods or services. Lanham Act § 43(c)(2)(A), 15 U.S.C. § 1125(c)(2)(A). The TDRA outlines four factors that a court may consider to determine whether a mark qualifies as "famous" under the statute: (1) the "duration, extent, and geographic reach of advertising and publicity of the mark," (2) the "amount, volume, and geographic extent of sales of goods and services offered under the mark," (3) the "extent of actual recognition of the mark," and (4) whether "the mark was registered." Id. Based on these criteria, courts generally have limited famous marks to those that receive multi-million dollar advertising budgets, generate hundreds of millions of dollars in sales annually, and are almost universally recognized by the general public. See Jada Toys, Inc. v. Mattel, Inc., 518 F.3d 628, 635 (9th Cir. 2008) (holding that a reasonable jury could find "Hot Wheels"

7

famous because Mattel had spent $350 million in advertising and had sold three billion units since inception); TCPIP Holding Co. v. Haar Communications, Inc., 244 F.3d 88, 99 (2d Cir. 2001) (noting that "Dupont, Buick, or Kodak" exemplify famous marks deserving protection from dilution); Bd. of Regents, Univ. of Texas Sys. v. KST Elec., Ltd., 550 F. Supp. 2d 657, 679 (W.D. Tex. 2008) ("One of the major purposes of the TDRA was to restrict dilution causes of action to those few truly famous marks like Budweiser beer, Camel cigarettes, Barbie Dolls, and the like.") (internal citations omitted).

With the 2006 amendment to federal anti-dilution law, that added the phrase "widely recognized by the consuming public in the United States," Congress intended to "reject dilution claims based on 'niche' fame, i.e. fame limited to a particular channel of trade, segment of industry or service, or geographic region." Dan-Foam A/S v. Brand Named Beds, LLC, 500 F. Supp. 2d 296, 307 n.90 (S.D.N.Y. 2007) (internal citations and quotation marks omitted).  The policy rationale behind the fame requirement is to encourage and promote competition; without limiting protection to famous marks, anti-dilution laws would turn every trademark into "an anti-competitive weapon."  J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 24:104 (2009 ed.).

In its pleadings, the plaintiff alleges that the Bellini Chair trademark is well known to the "relevant public interested in contemporary furniture." The TDRA requires, however, that the trademark must be famous to the "general consuming public of the United States," not merely the contemporary furniture niche of the population. The plaintiff argues that it does not have to prove in its pleadings that the trademark is famous. The plaintiff, however, must plead enough facts to show that its dilution claim is facially plausible. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The plaintiff has not alleged sufficient facts to suggest that its Bellini Chair trademark plausibly has achieved the required level of fame to warrant protection. Indeed, the plaintiff has only pleaded that its chair is known to a niche population. Moreover, the plaintiff has failed to include any other factual allegations that would make a claim of "fame" plausible. The plaintiff does not include any information about the chair's advertising budget or the strength of its consumer recognition in the general population. In addition, the plaintiff's annual revenue of $1 million is most likely insufficient to place it among proven "famous" trademarks such as Dupont, Buick, or Kodak. See GMA Accessories, Inc. v. Croscill, Inc., No. 06 Civ. 6236, 2008 WL 591803, at *10 (S.D.N.Y. Mar. 3, 2008) (stating that an average

9

annual revenue of less than $3 million and an advertising budget of $17,000 over 11 years did not qualify the mark to be famous).

It remains unclear whether the plaintiff may be capable of pleading in good faith that its mark is "famous" within the meaning of the statute, with sufficient factual allegations to make such a claim plausible.  But in its pleadings, the plaintiff did not make an adequate showing on that question.  For that reason, the defendant's motion to dismiss the plaintiff's fourth cause of action for federal trademark dilution is granted with leave to the plaintiff to file an amended claim.

B

Section 43(a) of the Lanham Act provides a private cause of action against any person who:

> in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive . . . or as to the origin, sponsorship, or approval of his or her goods . . . by another person . . . .

15 U.S.C. § 1125(a).

The protection of unregistered trademarks under the Lanham Act extends to trade dress.  Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 209 (2000).  In all significant aspects, trade dress protection is coextensive under New York

State common law and federal law.  See N.Y. Gen. Bus. Law § 360-l; Cartier, Inc. v. Four Star Jewelry Creations, Inc., 348 F. Supp. 2d 217, 250-51 (S.D.N.Y. 2004).  Trade dress "encompasses the design and appearance of the product together with all the elements making up the overall image that serves to identify the product presented to the customer."  Fun-Damental Too, Ltd. v. Gemmy Indus. Corp., 111 F.3d 993, 999 (2d Cir. 1997).  It is "essentially a product's total image and overall appearance . . . as defined by its overall composition and design, including size, shape, color, texture, and graphics."  Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc., 58 F.3d 27, 31 (2d Cir. 1995) (internal quotations and citations omitted).  The protection of trade dress under the Lanham Act serves "to secure to the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish among competing producers."  Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 774 (1992) (internal quotations omitted).  However, "the Lanham Act must [also] be construed in the light of a strong federal policy in favor of vigorously competitive markets."  Landscape Forms, Inc. v. Columbia Cascade Co., 113 F.3d 373, 379 (2d Cir. 1997).

 To succeed on its trade dress infringement claim, the plaintiff must show "(a) that its trade dress is entitled to protection under the Act, and (b) that the defendant's dress

11

infringes on the plaintiff's dress by creating a likelihood of confusion." Id. at 377. Two types of trade dress are entitled to protection- product packaging and product design. "Product packaging" trade dress refers to the "dressing" or "packaging" of a product. "Product design" trade dress refers to the design or configuration of the product itself. See Milstein, 58 F.3d at 31. The plaintiff seeks protection for the overall appearance of the Bellini Chair; therefore, for product design trade dress.

To establish that product design trade dress is protectable, the plaintiff must (1) offer "a precise expression of the character and scope of the claimed trade dress"; (2) allege that "the claimed trade dress has secondary meaning"; (3) allege a likelihood of confusion between the plaintiff's good and the defendant's"; and (4) allege that "the claimed trade dress is non-functional." Sherwood 48 Assoc. v. Sony Corp. of Am., 76 Fed. Appx. 389, 391 (2d Cir. 2003) (citing Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 115-16 (2d Cir. 2001) and quoting Landscape Forms, 113 F.3d at 381). In its motion to dismiss, the defendant asserts that the plaintiff has failed to articulate properly the first and fourth elements of the test for trade dress infringement.

As the first element suggests, the plaintiff must articulate "the specific elements which compromise its distinct

12

dress." Landscape Forms, 113 F.3d at 381.  In addition, the plaintiff must specify "not just which features are distinctive, but also how they are distinctive." Shevy Custom Wigs, Inc. v. Aggie Wigs, No. 06 Cv. 1657, 2006 WL 3335008, *5 (E.D.N.Y. Nov. 17, 2006) (emphasis in original).  "Laudatory" descriptions without specificity "fail to indicate what unique combination of features makes the trade dress . . . likely to be perceived by consumers as bearing the stamp of their maker." Landscape Forms, 113 F.3d at 381-82; see also Shevy Custom Wigs, 2006 WL 3335008, at *5 (holding that Shevy's "sweeping 'descriptions' . . . in fact denote categories of features, not the features themselves"); Nat'l Lighting v. Bridge Metal Indus., LLC, 601 F. Supp. 2d 556, 562 (S.D.N.Y. 2009) (determining that a "laundry list of the elements that constitute a . . . design" is insufficient to show distinctiveness).

In this context, plaintiff's pleading is plainly insufficient.  In the Complaint, the plaintiff offers a vague description of its claimed trade dress as an "ornamental and sculptural chair" and appends two images of the chair as exhibits.  (Compl. ¶ 8; Exs. A and C.)  Exhibit A of the Complaint consists of an image included in the plaintiff's trademark registration of the Bellini Chair; Exhibit C includes an image from the defendant's website promoting the Bellini Chair.  (Compl. Exs. A and C.)  The plaintiff includes no

13

additional details regarding which elements of the plaintiff's trade dress design are distinctive, much less how certain elements are distinctive.

The plaintiff alleges that because "a picture is worth a thousand words," the images "without a doubt provide the most precise definition of the protected trade dress possible." However, images alone do not satisfy the plaintiff's obligation to articulate the distinctive features of the trade dress. See Nat'l Lighting, 601 F. Supp. 2d at 563 (holding that the court could not "be expected to distill from a set of images those elements that are common to a line of products and both distinctive and non-functional").

The plaintiff also suggests that because the plaintiff has a trademark registration, it need not articulate the specific elements of the trade dress that should be protected. A registration is "prima facie evidence of the validity of the registered mark," not the clarity of its scope. 15 U.S.C. § 1115(a). Registration, particularly a vague registration, does not affect the plaintiff's obligation to specify the elements of its allegedly distinctive dress. See, e.g., Cartier, Inc., 348 F. Supp. 2d at 223 (articulating the specific elements that constitute its distinct trade dress, despite having a registered mark). The plaintiff cites no case that holds it is unnecessary to specify the elements of trade dress and how the elements are

14

distinctive simply because the plaintiff has obtained a trademark registration.

In sum, the plaintiff has failed to allege the specific distinct aspects of trade dress that would make the trade dress for its chair protectable. Unless the plaintiff pleads more specifically, the Court will not know whether the defendant's DWR Chair infringes the protected aspects of the Bellini Chair trade dress. It is not sufficient that the plaintiff has alleged that the trade dress is registered, that it has secondary meaning, and that it is an "ornate and sculptural chair." Therefore, the defendant's motion to dismiss the plaintiff's third, seventh and ninth causes of action based on trade dress infringement is granted with leave to the plaintiff to file amended claims.

Subsequent to filing this motion to dismiss, the defendant withdrew its allegation that the third, seventh and ninth claims are defective because aspects of the trade dress are functional. (D.'s R. Mem. L. at pp. 8-9.) The defendant concedes that functionality does not apply to a registered trade dress.

## CONCLUSION

For the foregoing reasons, the plaintiff has failed to state a claim against the defendant for trademark dilution, unfair competition as to trade dress, injury to business

reputation as to trade dress, and common law trade dress infringement and unfair competition. Therefore, the defendant's motion to dismiss the third, fourth, seventh and ninth claims is granted and those claims are dismissed without prejudice. The plaintiff may file an amended complaint within ten days of the date of this Opinion and Order. The Clerk is directed to close Docket No. 12.

SO ORDERED.

Dated:   New York, New York
         August 14, 2009

                                              /s/ John G. Koeltl
                                              John G. Koeltl
                                              United States District Judge